UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT FINNEY,

    Plaintiff,

v.                                                    Case No.:  2:25-cv-125-SPC-DNF

DIMAS GIL, LUIS PENA,
MATTHEW GRUNY, and
JOHN DOE,

    Defendants.

_____/

## OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss (Doc. 23) and Plaintiff's Response (Doc. 26).  For the reasons below, the Motion is granted in part and denied in part.

## Background

This is a civil-rights case.  Plaintiff Robert Finney, a prisoner of the Florida Department of Corrections (FDOC), sues Captain Dimas Gil, Officer Luis Pena, Officer Matthew Gruny, and Officer John Doe (all FDOC employees) in their individual and official capacities, pursuant to 42 U.S.C. § 1983, claiming Eighth Amendment violations stemming from a use of force incident that occurred at the Desoto Annex on November 7, 2024. The Court recounts the factual background as pled in Finney's Amended Verified

Complaint (Doc. 19), which it must take as true to decide whether the Complaint states a plausible claim. *See Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

The November 7, 2024, incident began with a dispute over the length of Finney's beard. (*See* Doc. 19). Finney alleges that he was approached by Gil after lunch on November 7, 2024, and told that his beard was out of compliance with FDOC's grooming policy. (*See id.* at 5). He alleges that Gil then ordered him to have his beard shaved by another inmate. (*See id.*).

Finney alleges that after his beard was shaved, Gil "without warning for no reason sprayed Finney in the face with . . . chemical agent." (*See id.* at 6). He alleges that Gil then ordered him to the ground and placed him in hand restraints. (*See id.*). Finney alleges that the hand restraints were applied "so tight they severed nerves in [Finney's] wrist, resulting in the loss of sensation from his wrists down to his hands, thumbs, index, and middle fingers that haven't returned." (*See id.*). Finney alleges that Pena and Gruny were present during the incident but did not intervene. (*See id.* at 6–8).

As a result of the November 7, 2024, incident, Finney was charged with disobeying orders. (*See id.* at 6–7). Finney was found guilty of the charge after a disciplinary hearing. (*See id. See also* Ex. 1).[1]

---

[1]   A district court may consider a document not attached to a complaint for purposes of a motion to dismiss when that document is both central to the plaintiff's claim and undisputed.

Finney contends that Gil "used excessive force . . . by administering a chemical agent on Finney when [Finney] was not violating any prison rule and was not acting disruptively." (*See* Doc. 1 at 7). Based on this contention, Finney claims that "Gil's action violated Finney's rights under the Eighth Amendment of the United States Constitution, and caused Finney pain, suffering, physical injury, and emotional distress." (*See id.*). As to Pena and Gruny, Finney contends that the two "fail[ed] to intervene to prevent the misuse of force . . . in violation of the Eighth Amendment." (*See id.*).

As declaratory relief, Finney asks the Court to declare that Gil used excessive force against Finney in violation of the Eighth Amendment, and that Pena and Gruny violated the Eighth Amendment by failing to intervene to stop Gil's excessive use of force. (*See id.* at 8–9). As injunctive relief, Finney asks the Court to direct Gil to have no further contact with inmates and to cease his physical violence and threats toward Finney and other inmates. (*See id.*). Finally, as monetary relief, Finney seeks compensatory and punitive damages. (*See id.*).

## Legal Standard

---

*See Johnson v. City of Atlanta* 107 F.4th 1292, 1298–99 (11th Cir. 2024). The Disciplinary Report is central to Finney's claims, and its authenticity is not disputed. Finney discusses the disciplinary charges and hearing over several paragraphs in his Complaint.

When considering a motion to dismiss under Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The preferential standard of review, however, does not let all pleadings adorned with facts survive to the next stage of litigation. The Supreme Court has been clear on this point—a district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly,* 550 U.S. at 557 (internal quotation marks omitted)). And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

Finney files his Amended Verified Complaint under 42 U.S.C. § 1983. To state a section 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an

affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

## Discussion

### 1. Eleventh Amendment Immunity

Defendants raise Eleventh Amendment immunity to the extent Finney sues them in their official capacities. The Eleventh Amendment states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Absent an abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court. *See Edelman v. Jordan*, 415 U.S. 651, 662 (1974).

"When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Edelman*, 415 U.S. at 663. "Thus, the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." Id.

5

In other words, the bar protects state officials sued in their official capacities but not their individual capacities. *Melton v. Abston*, 841 F.3d 1207, 1234–35 (11th Cir. 2016).

Congress has not abrogated Florida's immunity, and Florida has not waived its Eleventh Amendment immunity. *See Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990). Finney, therefore, cannot sue Defendants in their official capacities.

### 2.  Equitable Remedies

Defendants assert that Finney failed to state claims on which equitable relief can be granted. As relief, Finney requests that this Honorable Court declare that Defendants alleged conduct on November 7, 2025 violated Finney's constitutional rights. Finney may not, however, seek declaratory relief to adjudicate the legality of past conduct. *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999) ("a plaintiff may not use the [*Ex parte Young*] doctrine to adjudicate the legality of past conduct") (citation omitted); *Jones v. Buckner*, 963 F. Supp. 2d 1267, 1283 (N.D. Ala. 2013) ("Although *Ex parte Young* allows declaratory relief, it does not apply when the declaratory relief pertains only to past violations of federal law.") (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985)). As a result, to the extent Finney seeks declaratory relief against Defendants, Finney has no likelihood of success and any such claims must be dismissed.

Finney also seeks preliminary and permanent injunctive relief directed toward Gil. Specifically, Finney asks that the Court enjoin Gil from having "contact with inmates to cease his physical violence and threats towards Finney and other inmates." (*See* Doc. 19 at 8). The injunctive relief requested by Finney is not, however, permissible to the extent Finney seeks relief for inmates other than himself. *See Rhodes v. Stewart*, 488 U.S. 1, 3–4 (1988) (the courts can only provide relief that is meaningful "if it affects the behavior of the defendant toward the plaintiff.").

The requested injunction is also inappropriate with respect to the relief requested on his own behalf, as it would do nothing more than direct Gil to obey the law. *See Burton v. City of Belle Glade*, 178 F.3d 1175, 1200–01 (11th Cir 1999). Federal Rule of Civil Procedure 65(d) guides the contents and scope of injunctions. Pursuant to Rule 65(d), "every order granting an injunction . . . must: (a) state the reasons why it issued; (b) state the terms specifically; and (c) describe in reasonably detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d). The requested injunction "to cease his physical violence and threats" lacks the specificity required by the Rule and would result in an injunction so overly vague that it could not be enforced. Any such injunction would amount to a direction that Gil follow existing law, which is not an appropriate remedy. *See Burton*, at 1200-01.

Furthermore, to prevail on a motion for preliminary injunction, the movant must establish that: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted). "For a permanent injunction, the standard is essentially the same, except that the movant must establish actual success on the merits, as opposed to a likelihood of success." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261 (11th Cir. 2006) (citation omitted). Finney fails to demonstrate the existence of an irreparable injury, as he is seeking monetary damages for his alleged injuries. The availability of monetary compensation as a suitable remedy indicates that the injuries alleged are not irreparable by means other than injunction. Finney also fails to demonstrate a threat of future injury that would justify injunctive relief. Defendants' alleged prior conduct forms the basis of this lawsuit. Finney alleges the existence of any actions or threats by Defendants toward him in the nearly one year that passed between the November 7, 2024, incident and the filing of the Amended Verified Complaint.

Finally, Finney's request for injunctive relief is adverse to the interests of the public because it is adverse to the operation of prison conduct and safety.

8

Finney's prayer for injunctive relief broadly requests that Gil have no contact with any inmate. Such an injunction would prohibit the execution of Gil's job functions.

For these reasons, Finney's request for equitable relief is inappropriate and must be dismissed.

### 3. Exhaustion

Finally, Defendants argue that Finney failed to exhaust all available administrative remedies relating to his Eighth Amendment claims against Pena and Gruny for failure to intervene.

Under the Prison Litigation Reform Act (PLRA), before a prisoner may bring a claim challenging the conditions of his confinement, he must exhaust available administrative remedies. 42 U.S.C. § 1997e. The purpose of administrative exhaustion "is to put the administrative authority on notice of all issues in contention and to allow the authority an opportunity to investigate those issues." *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (cleaned up). The PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

The Eleventh Circuit has established a two-step process for deciding a motion to dismiss for failure to exhaust administrative remedies:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed…

> If the complaint is not subject to dismissal at the first step, where plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Turner v. Burnside*, 541 F.3d 1077, 1082–83 (11th Cir. 2008).

The Florida legislature delegated the establishment of administrative remedies for aggrieved inmates to the FDOC. *Chandler*, 379 F.3d at 1287. The FDOC created a three-step grievance process. To exhaust it, a prisoner must (1) file an informal grievance to the responsible staff member; (2) file a formal grievance with the warden's office; and (3) appeal the formal grievance to the Secretary of the FDOC. *Id.* at 1288.

Certain grievances may bypass the informal grievance process and proceed directly to the formal grievance process. *See* Chapter 33-105.005(1) and 33-103.006(3), Fla. Admin. Code. These include emergency grievances, grievances about disciplinary actions, grievances of reprisals, grievances of a

sensitive nature, medical grievances, grievances involving incentive gain time governed by Florida Administrative Code, Rule 33-601.1012, grievances challenging placement in close management or subsequent review, grievances alleging violation of the Americans with Disabilities Act, and grievances regarding the return of incoming mail governed by Florida Administrative Code, Rule 33-201.101(14). *See Id.*

Finney filed multiple grievances stemming from the November 7, 2024, incident. The first grievance arising from this incident was a formal grievance, marked received by the FDOC on November 15, 2024. (Doc. 23, Ex. 2). Because the grievance was filed in response to a disciplinary action,[2] Finney was able to skip the informal grievance step and proceed directly to a formal grievance. *See* Chapter 33-105.005(1) and 33-103.006(3), Florida Administrative Code. The formal grievance raised Finney's excessive use of force claim against Gil. Inmates are limited to raising one issue per grievance. *See* Chapter 33-103.005(2)(b), Fla. Admin. Code. Although Finney mentions the dispute over his beard in his formal grievance, the focus of the formal grievance is Gil's use of force. The formal grievance opens with the sentence "abuse of use of force," and his request for relief further reveals the purpose of Finney's formal

---

[2]   The formal grievance indicates it was filed "in response/in reference to log # 564-241968," which is the log number of the FDOC disciplinary report that resulted from the November 7, 2024, incident. (*See* Doc. 23, Ex. 2).

grievance. (*See* Ex. 2 at 2). Through his formal grievance, Finney requested (1) the provision of further medical attention, (2) Gil to take training on the proper use of force, (3) legal action against Gil "if deemed necessary," (4) an apology from Gil, (5) the removal of the charge for disobeying a verbal order, and (6) investigation of Gil's prior uses of force. (*See id.*). Finney did not request any relief relating to the enforcement of the FDOC's grooming policy and did not mention the actions or presence of any corrections officers other than Gil during the incident.

Finney's formal grievance was reviewed and denied by the FDOC because the incident from which the grievance arose was under review by the Inspector General's office. (*See id.* at 1). After his formal grievance was denied, Finney filed an administrative appeal with the FDOC Secretary. (*See* Doc. 23, Ex. 3). Finney's administrative appeal was marked received by the FDOC on December 11, 2024. (*See id.* at 2). The focus of Finney's administrative appeal was the alleged excessive use of force by Gil. In his administrative appeal, Finney stated "I wish to appeal at this time in regards to the abuse of force suffered by the hands of . . . Gil." (*See id.*). Finney's administrative appeal was reviewed by the FDOC and was denied on December 16, 2024. (*See id.* at 1). Following the review, Finney was provided direction to seek additional medical attention at his institution if needed. (*See id.*).

After Finney filed his formal grievance and before he filed his administrative appeal, he filed a separate informal grievance regarding the enforcement of FDOC's grooming policy. (*See* Doc. 23, Ex. 4). The informal grievance was marked received by the FDOC on November 25, 2024. (*See id.* at 2). Where the previously discussed grievances stated they addressed the "abuse of use of force"[3], the informal grievance regarding the FDOC's grooming policy states that it is "concerning [Finney's] religion." (*See id.*) In his informal grievance, Finney alleged that he was forced to shave his beard to comply with the FDOC's grooming policy and that the requirement is contrary to the tenets of his religion. (*See id.* at 1). The informal grievance does not address the actions or presence of any corrections officers other than Gil during the incident. Finney's informal grievance was reviewed by the FDOC and denied. (*See id.* at 2). Finney did not file any further grievances relating to the November 7, 2025, incident. (Doc. 23, Ex. 5 (Declaration of Alan McManus); Ex. 6 (Declaration of Joelynn Whidden).

Defendants argue that Finney did not file any grievances that specifically or generally addressed his allegations against Pena or Gruny (which would put the FDOC on notice) and thus, he failed to exhaust the available administrative remedies regarding any claims against them.

---

[3] (*See* Ex. 2 at 2; Ex. 3 at 2).

However, in his Verified Motion in Opposition to Defendant's Motion to Dismiss (Doc. 26), Finney attempts to rebut Defendants' argument by alleging that (1) he filed a grievance against Pena and Gruny on December 3, 2024 which was not processed, and (2) Gruny approached him "in A-dorm where [Plaintiff] lived at the time and threatened Plaintiff stating, 'oh you like filing grievances;' 'file another grievance and this knife will be found on your bunk' while simultaneously displaying a prison knife to Plaintiff." (*Id.* at 4). Finney appears to allege that administrative remedies were unavailable to him and that Defendants' argument that he failed to exhaust them should be rejected.

Accepting Finney's allegations as true at this stage, which the Court must do, the Court cannot conclude that he failed to exhaust available administrative remedies. His allegations place the availability of administrative remedies in dispute, raising factual issues that cannot be resolved on a motion to dismiss.

Accordingly, it is now

**ORDERED:**

1. Defendants' Dimas Gil, Luis Pena, Matthew Gruny, and John Doe's Motion to Dismiss (Doc. 23) is **GRANTED IN PART AND DENIED IN PART**:

14

a. Plaintiff Robert Finney's claims for monetary damages against Defendants in their official capacities are **DISMISSED WITH PREJUDICE**.

b. Plaintiff's claims for declaratory and injunctive relief are **DISMISSED WITHOUT PREJUDICE**.

c. The Motion is **DENIED WITHOUT PREJUDICE** as to Defendants' exhaustion defense. Plaintiffs' claims for damages in their individual capacities shall proceed.

2. The parties are granted **60 days** from the date of this Order to conduct **limited discovery solely on the issue of administrative exhaustion**, including the availability of administrative remedies to Plaintiff. No other discovery shall proceed during this limited discovery period absent further order of the Court.

3. Within **30 days** after the close of this limited discovery period, Defendants may file **a motion for summary judgment** addressing exhaustion.

4. Plaintiff shall file a response to any motion for summary judgment within **21 days** of service of the motion, unless otherwise ordered.

5. Defendant's remaining Motion for Leave to File a Reply to Finney's Verified Motion in Opposition to the Motion to Dismiss (Doc. 27)

and Motion for Leave to Conduct Limited Discovery (Doc. 28) are

**DENIED AS MOOT.**

**DONE** and **ORDERED** in Fort Myers, Florida on April 30, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record

16